AO 91 (Rev. 11/11)  Criminal Complaint

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order

# UNITED STATES DISTRICT COURT
### for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED

*April 24, 2020*

David J. Bradley, Clerk of Court

| | |
|---|---|
| United States of America<br>v.<br>Israel B Chapa Jr. : DOB ████████, ████<br>████████████████████ Isaac Rodriguez<br>DOB: ████████, Ashley Giddens DOB: ██████<br>and Steve Baranowski, III DOB: ████████<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br> Case No.  **4:20mj0736** |

TRUE COPY I CERTIFY
ATTEST: April 24, 2020
DAVID J. BRADLEY, Clerk of Court
By: *Kathy Murphy* Deputy Clerk

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___11/1/2019 through 3/30/2020___ in the county of ___Harris___ in the
___Southern___ District of ___Texas___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. Section 924(a)(1)(A)<br>Title 18 U.S.C. Section 2 | Providing a False Statement During Purchase of a Firearm;<br>Aiding and Abetting |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Jarod W. Cardona*
*Complainant's signature*

ATF Special Agent Jarod Cardona
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ___04/24/2020___

*Dena Palermo*
*Judge's signature*

City and state:  ___Houston, TX___

Magistrate Judge Dena H. Palermo
*Printed name and title*

## AFFIDAVIT

I, Special Agent Jarod Cardona, affiant, being first duly sworn via telephone hereby depose and state the following:

1. That I am currently employed as a Special Agent in the Bureau of Alcohol, Tobacco and Firearms & Explosives (ATF) and have been so since 2009. That during this time I have conducted and participated in numerous investigations concerning the illegal possession of firearms, Federal controlled substance conspiracy laws, and the commission of violent crimes, to include home invasion robbery investigations.

2. During my employment as an ATF Special Agent, I have received specialized training regarding, and have personally participated in, various types of investigative activity, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace devices; (g) the court-authorized interception of both wire and electronic communications (i.e., Title III wiretaps); and (h) the handling and maintenance of evidence.

3. This Affidavit is made for the limited purpose of establishing probable cause in support of a Criminal Complaint alleging that Isaac RODRIGUEZ, Victor CAMACHO, Israel CHAPA, JR., ███████████████ Ashely GIDDENS, and Steve BARANOSKI, III violated the following statutes:

   - Title 18 U.S.C. Section 924(a)(1)(A): Whoever, knowingly makes any false statement or representation with respect to the information required to be kept in the records of a federal firearms licensee (FFL). (Commonly known as a *straw purchase*)

   - Title 18 U.S.C. Section 2: (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

4. Since this Affidavit is for the limited purpose of establishing probable cause to support the Criminal Complaint, it contains only a summary of relevant facts. I have not included every fact known to me concerning the entities, individuals, and the events described in this Affidavit.

5. The statements made in this Affidavit are based in part on: (a) my personal participation in this investigation; (b) information provided to me by other law enforcement officers; (c) review of consensually and non-consensually monitored and/or recorded conversations; (d) criminal history records maintained by various law enforcement agencies, Houston Police Department ("HPD")

and the National Criminal Information Center ("NCIC"); and (e) the training and experience of myself and other law enforcement agents and officers.

6.  To the extent that consensually recorded communications are summarized below, those summaries do not include references to all of the topics covered during the course of the conversation that was recorded.  In addition, the summaries do not include references to all statements made by the speakers on the topics that are described.  All quotations from recorded conversations are based upon preliminary transcriptions of those conversations and/or from the Affiant having personally listened to the recordings.  In addition, the participants in many of these communications involved the use of slang terms, and code words.  Those code words and slang terms, as well as communications in general, are analyzed to their meaning in this Affidavit based upon information from (a) the CI, (b) my training, experience and knowledge of this investigation, (c) other law enforcement officers' training, experience and knowledge of this investigation, and (d) other evidence gathered during the course of the investigation, such as physical surveillance.

7.  Your affiant knows that Federal Firearms Licensees (FFL) are required to keep the ATF Form 4473 (Firearms Transaction Record) which is completed by the purchaser, which includes information regarding the name, age, current residence of the purchaser, and the purchasers certification that he or she is not prohibited from possessing firearms.  Furthermore, the purchaser must certify that their answers on the ATF Form 4473 are true, correct and complete.

8.  Moreover, the ATF Form 4473 also warns the buyer that making a false statement on the ATF Form 4473 is a felony offense.  Lastly, any false statement or representation made on the ATF Form 4473, which is information required to be kept in the records of a federal firearms licensee, is a violation of 18 USC 924(a)(1)(A).

**FACTS LEADING TO INCIDENT ON DECEMBER 5, 2019 BETWEEN VICTOR CAMACHO, ISAAC RODRIGUEZ, AND ISRAEL CHAPA**

9.  On December 5, 2019, the Brownsville, TX Police Department responded to a call of shots fired. Brownsville Police Department arrested Victor **CAMACHO,** ███████████ ,identified by his Texas Driver's License, in connection to this incident.  Upon receiving consent to search, law enforcement found four (4) .308 caliber Diamondback Arms rifles that were disassembled into at least two pieces/parts and wrapped in bundles taped with blue painter's tape.  In your Affiant's training and experience, this type of packaging is consistent with firearms trafficking.  ATF agents involved in the case traced the rifles and found they were purchased one (1) day prior from Zeroed In Armory, LLC (hereafter referred to as ZIA) in Pearland, Texas on December 4, 2019 (Diamondback Firearms, Model DB-10, .308 caliber, serial numbers DB-7007498, DB-7003463, DB-7003521, and DB-7007490).  The purchaser was Israel Bernal **CHAPA, JR.,** ████████ ████████ who resides in Houston, TX.  There were also approximately ten (10) .50 caliber magazines, ten (10) .308 caliber drum magazines and a number of P90 5.7 caliber magazines, all wrapped in taped bundles.

10. A post-Miranda interview was conducted of **CAMACHO** in which he stated he purchased the found (4) Diamondback rifles the day prior (December 4, 2019) from a George Lopez in Corpus Christi, Texas.

11. Pursuant to the December 5, 2019 arrest of **CAMACHO**, a cellular phone was seized from his person incident to arrest and retained by the Brownsville, TX Police Department as evidence. This cellular device was later turned over to ATF Brownsville office to be retained as evidence.

12. On December 11, 2019, ATF learned that a shootout occurred between suspects from the Cartel Del Noreste (CDN) and the Mexican Security Forces in Villa Union, Coahuila, Mexico. More than fifty suspects dressed in military fatigues and tactical gear were in eight (8) light armored (homemade) vehicles marked with "CDN." More than fifteen (15) suspects were deceased, as well as four (4) State police officers. As a result of the shootout, Mexican Security Forces conducted a series of operations which led to additional firearms being seized from the CDN. A trace of the recovered firearms revealed that one (1) of the rifles, a JNC MFG, Model: M2-HB, Caliber: .50 BMG, Serial Number: 27080 rifle, was purchased on or about November 19, 2019, by **CHAPA, JR.** from ZIA with a thirteen (13) day TTC. A review of ATF Form 4473s (4473) completed by **CHAPA, JR.** at ZIA revealed that **CHAPA, JR.** purchased approximately one hundred fifty-six (156) firearms from ZIA since July 2019.

13. ATF agents attempted to locate **CHAPA, JR.** at the address he utilized as his current address on all of the ATF Form 4473s acquired by ATF from ZIA: 3030 Mooney St. Houston, TX. A brief interview with **CHAPA, JR.'s** family member at this address revealed **CHAPA, JR.** had not lived at this address for at least one (1) year and provided 11862 Plum Meadow Dr. Houston, TX as **CHAPA, JR.'s** current place of residence. On December 13, 2019, **CHAPA, JR.** was located at the aforementioned address and interviewed by ATF Agents. **CHAPA, JR.** stated he had been living at the Plum Meadow address for a year and lied on the 4473 regarding his current address being on Mooney Street. **CHAPA, JR.** also stated he sold all one hundred fifty-six (156) he firearms purchased from ZIA to an individual he knows as "Jose," who was later identified by ATF as **CAMACHO** through cellphone provider subscriber information. **CHAPA, JR.** later changed his statement to say he sold the "*majority*" of his firearms to **CAMACHO**.

14. **CHAPA, JR.** also stated that he remembers selling **CAMACHO** some "Diamondback rifles" (these are believed to be the ones found with **CAMACHO** at the time of his arrest). **CHAPA, JR.** stated he would contact **CAMACHO** via his cellular device and they would arrange to meet in Houston, TX where **CHAPA, JR.** would provide **CAMACHO** with firearms.

15. On March 5, 2020, Brownsville, TX ATF Agent A. Cavanaugh obtained a signed search warrant for the cellular phone seized pursuant to **CAMACHO's** arrest on December 5, 2020. The search warrant (case B-20-274-MJ) was signed by United States Magistrate Judge, the Honorable Roland G. Morgan, in Brownsville, TX.

16. A digital forensic analysis of **CAMACHO's** cellular phone was conducted on or about March 9, 2020. Pursuant to this analysis, ATF agents retrieved a text/audio conversation from a social messaging application titled WhatsApp. The conversation was between the phone number

associated to **CAMACHO** and a phone number later identified as belonging to Isaac **RODRIGUEZ**.

17. During this WhatsApp conversation, between the dates of November 28, 2019 and December 4, 2019, **CAMACHO** inquires about pricing and acquiring firearms and magazines from **RODRIGUEZ,** specifically M2 rifles, .308 rifles, .50 caliber rifle magazines, and P90 magazines. **CAMACHO** asks **RODRIGUEZ** when the rifles and magazines will be ordered. **RODRIGUEZ** states he will order approximately ten (10) Diamondback Rifles. **RODRIGUEZ** then informed **CAMACHO** that ten (10) .50 caliber rifle magazines and ten (10) P90 rifles magazines had already arrived and that he was awaiting the arrival of the .308s (Diamondbacks). On December 3, 2019, **CAMACHO** states he will be traveling to Houston, TX on the aforementioned date. **RODRIGUEZ** replies that he will verify with the *store* (ZIA) to ensure the ordered rifles are ready for pick up at which time **RODRIGUEZ** will give them to **CAMACHO**. On December 4, 2019 **RODRIGUEZ** informs **CAMACHO** the Diamondback rifles would be arriving this date. **CAMACHO** later asks **RODRIGUEZ** when his *buddy* would be there to which **RODRIGUEZ** responds "*they are already being loaded*."

18. One (1) of the numerous 4473s completed by CHAPA, JR. at ZIA reflects that on December 4, 2019, CHAPA, JR. purchased several firearms to include eleven (11) .308 caliber Diamondback rifles. Four (4) of these rifles were recovered in **CAMACHO's** trunk the following day, December 5, 2019 *(referenced in paragraph 9)*.

19. Pursuant to this investigation, **CHAPA, JR.** admittedly provided a false address on the previously mentioned 4473. Additionally, your affiant believes **CHAPA, JR.** purchased the four (4) Diamondback rifles for **CAMACHO,** therefore providing false information as it pertains to question 11(a) of the ATF Form 4473 when he checked the box as being the actual buyer of the firearms when he had knowledge, or reason to believe, the four (4) Diamondback rifles he purchased on or about December 4, 2019 from ZIA were for in fact for **CAMACHO**. Your affiant also believes **RODRIGUEZ** aided and abetted the straw purchase of said Diamondback rifles by facilitating the purchase for **CAMACHO** by way of **CHAPA, JR.**

20. Due to the facts outlined above and to the best of your affiant's knowledge and belief, all statements made in this affidavit are true and correct. Based on these facts, your affiant believes probable cause exists for the issuance of an arrest warrant for the person of Isaac **RODRIGUEZ** and Victor **CAMACHO** for aiding and abetting Israel **CHAPA, JR.** in the straw purchase of the previously mentioned four (4) Diamondback rifles in violation of Title 18 U.S.C. Section 924(a)(1)(A) and Title 18 U.S.C. Section 2.

**FACTS LEADING TO INCIDENT ON DECEMBER 19, 2019 BETWEEN
VICTOR CAMACHO, ISAAC RODRIGUEZ, AND** ███████████

21. Affiant reviewed a report written by Fort Bend County K-9 Deputy Tondera. The report stated that on or about December 19, 2019, Deputy Tondera initiated a vehicle traffic stop for speeding. Deputy Tondera identified the driver of said vehicle as Victor **CAMACHO,** by his Texas Driver's

License. **CAMACHO** was traveling with his wife, Lucila BANDA, and their small child. Based on the Deputy's training and experience, he detected deception from **CAMACHO** when being asked basic questions. Due to **CAMACHO's** believed deception, Deputy Tondera asked **CAMACHO** if he could search his vehicle, which he replied, "*no.*"

22. Based on **CAMACHO's** answers and nervous behavior, Deputy Tondera believed illegal contraband was located in the vehicle. Deputy Tondera and his K-9 "Gaz" conducted a free air sniff around the exterior of the vehicle. During this free-air sniff, Deputy Tondera noticed a "Justifiable Noticeable Difference" in "Gaz's" behavior, at which time he began tracing the odor of contraband to its source, coming to a final response on the driver's rear door seam and handle. Due to this final response, Deputy Tondera began a probable cause search of the vehicle, ultimately locating a disassembled Barrett .50 caliber BMG rifle with removed/obliterated/altered serial numbers in the trunk of the vehicle. Additionally, a box with one hundred (100) rounds of .50 caliber ammunition was discovered. Deputy Tondera lastly asked **CAMACHO** about drug use. **CAMACHO** subsequently admitted to prior use of marijuana and being around associates that recently used marijuana. Deputy Tondera took **CAMACHO** and BANDA into custody and contacted ATF Agent N. Adibi regarding the firearm.

23. Affiant also reviewed the reports and spoke with ATF Agents N. Adibi and J. Settelen who immediately responded to the location where **CAMACHO** and BANDA were detained – 231 Legion Drive, Richmond, Texas 77469. Agents Adibi and Settelen provided both **CAMACHO** and BANDA their Miranda rights prior to speaking with them. Both parties agreed to speak with law enforcement without counsel present. BANDA stated the black Nissan is registered to her, however, she was unaware of any firearms in the vehicle and further stated the Barrett.50 caliber was not hers. BANDA also stated **CAMACHO** left alone with the vehicle to run errands at approximately 10:00am.

24. During the interview with **CAMACHO**, he admitted to Agents Adibi and Settelen that he purchased the Barrett .50 caliber rifle for $6,000.00 from a friend "*a couple of days ago*" but was picking it up on December 19, 2020. **CAMACHO** also stated he was aware the serial numbers on the firearm were removed/obliterated at the time of the purchase and that he had knowledge that possessing a firearm with an obliterated serial number was illegal. **CAMACHO** further stated that he lied to ATF agents in Brownsville, TX on December 5, 2019 when he stated he acquired the previously mentioned Diamondback rifles from "George Lopez" in Corpus Christi, TX (*referenced in paragraph 10*).

25. Pursuant to the traffic stop and interview, ATF Agents asked **CAMACHO** for permission to search two (2) cellular phones that were in his possession at the time of his arrest (an Apple iPhone 11 Pro and a Cricket Model U304AA). **CAMACHO** provided verbal and written consent to search both phones.

26. A digital forensic analysis of **CAMACHO's** cellular phones seized on December 19, 2019 was conducted on, or about, December 20, 2019. Pursuant to this analysis, ATF agents retrieved a text/audio conversation from a social messaging application titled WhatsApp. The conversation was between the phone number associated to **CAMACHO** and a phone number later found to be associated to Isaac **RODRIGUEZ**.

27. Affiant reviewed the phone dump and WhatsApp conversation. During this WhatsApp conversation, between the dates of December 17, 2019 and December 19, 2019, CAMACHO inquired about acquiring a .50 caliber rifle from **RODRIGUEZ**. **RODRIGUEZ** offers to order the rifle on December 17, 2019 and within a matter of minutes tells **CAMACHO** *"it's been ordered."* On December 18, 2019, **RODRIGUEZ** informs **CAMACHO** the .50 caliber rifle is *"on hand"* and *"everything came in, everything is a done deal."* **RODRIGUEZ** tells **CAMACHO** *"I'm going to give you the .50 caliber and one hundred (100) rounds for 13 even ($13,000.00)."* **CAMACHO** confirms and agrees to pay this amount. The next day, on December 19, 2019, **CAMACHO** informs **RODRIGUEZ** he is on his way to Houston. **RODRIGUEZ** responds by providing **CAMACHO** with an address of 1804 Sunny Dr. and states *"....there's a trailer where there is a boat, right there."* **CAMACHO** then asks **RODRIGUEZ** if he is there. Shortly thereafter, **CAMACHO** sends two (2) picture messages to **RODRIGUEZ** that depict the obliteration job done to the rifle (serial number later identified as AA009174). A few hours after the pictures are sent to **RODRIGUEZ**, **CAMACHO** is discovered with the Barrett .50 caliber rifle and the one hundred (100) rounds of ammunition in his trunk during the traffic stop conducted by the Fort Bend County Sherriff's Department.

28. On December 20, 2019, ATF Agent Settelen contacted Barrett Firearms and spoke to an employee in the compliance section who directed Agent Settelen to additional markings located within the Barrett .50 caliber rifle seized from **CAMACHO**. These markings were located and provided to Barrett Firearms, who then obtained the rifle's serial number based on said markings (serial number: AA009174).

29. An ATF trace was initiated using serial number AA09174 through the National Tracing Center Electronic Tracing System (E-Trace). The trace results revealed that the Barrett .50 caliber rifle found in **CAMACHO's** possession with an obliterated serial number on December 19, 2019, was purchased one day prior on December 18, 2019, by ██████████ from ZIA.

30. ATF agents obtained the ATF Form 4473 completed by ██████████ and confirmed that on December 18, 2019, ██ purchased the aforementioned Barrett .50 caliber rifle from ZIA, the same day **RODRIGUEZ** informed **CAMACHO** that was rifle was *"on hand"* and that the deal was done.

31. Pursuant to this investigation, your affiant believes ██████████ purchased the Barrett Firearms, Model 82A1, .50 caliber BMG, serial number: AA009174 for **CAMACHO**, therefore providing false information as it pertains to question 11(a) of the ATF Form 4473 when ██ checked the box as being the actual buyer of the firearm when ██ had knowledge, or reason to believe, the aforementioned firearm ██ purchased on or about December 18, 2019 from ZIA was in fact for **CAMACHO**. Your affiant also believes **RODRIGUEZ** aided and abetted the straw purchase of said firearm by facilitating the purchase for **CAMACHO** by way of ██████████.

32. Due to the facts outlined above and to the best of your affiant's knowledge and belief, all statements made in this affidavit are true and correct. Based on these facts, your affiant believes probable cause exists for the issuance of an arrest warrant for the persons of Isaac **RODRIGUEZ** and Victor **CAMACHO** for aiding and abetting ██████████ in the straw purchase of

the previously mentioned Barrett .50 caliber rifle, in violation of Title 18 U.S.C. Section 924(a)(1)(A) and Title 18 U.S.C. Section 2.

## FACTS LEADING TO STRAW PURCHASING SCHEME BETWEEN ISRAEL CHAPA, JR. AND ASHLEY GIDDENS

33. On December 5, 2019, the Brownsville, TX Police Department responded to a call of shots fired. Brownsville Police Department arrested Victor **CAMACHO** in connection to this incident. Upon receiving consent to search, a Glock pistol, model 19X, 9mm, serial number ADKG380, which was traced by ATF utilizing the National Tracing Center Electronic Tracing System (E-Trace), was found in **CAMACHO's** vehicle. The pistol was purchased from ZIA by Ashley **GIDDENS**, with a time-to-crime (TTC) of twenty-seven (27) days.

34. On December 6, 2019 ATF agents went to **CAMACHO's** last known residence, 864 Jenny Circle Brownsville Texas, and obtained consent to search the property and vehicles located on said property that was believed to be owned by **CAMACHO's** grandmother, Elvia HEREVIA. During the search, ATF agents located two empty gun boxes with identifying markings for the following firearms: F.N. (FN HERSTAL) rifle, Model: PS90, Caliber: .57, Serial Number: FN121986; and Diamondback Arms Inc. rifle, Model: DB-10, caliber: 308, Serial Number: DB-7006209.

35. A trace initiated by ATF agents in Brownsville, TX revealed the PS90 rifle and the Diamondback rifle were purchased by **GIDDENS** on November 14, 2019 from ZIA, approximately twenty-two (22) days prior to the boxes being discovered at the **CAMACHO** residence. To date, the rifles themselves have yet to be recovered. During an interview on December 5, 2019, **CAMACHO** claimed he did not own a PS90 rifle.

36. On December 11, 2019 ATF agents learned of Israel **CHAPA, JR.** and his purchase of approximately one hundred and fifty-six (156) firearms from ZIA since July 2019 (*see paragraphs 9, 12 and 13*). These firearms included a JNC MFG rifle, Model: M2-HB, Caliber: .50 BMG, Serial Number: 27080, recovered in Mexico in December 2019 and four (4) Diamondback rifles (Model DB-10, .308 caliber, serial numbers DB-7007498, DB-7003463, DB-7003521, and DB-7007490) seized from **CAMACHO** on December 5, 2019.

37. On December 24, 2019 Agent Cardona requested ATF Form 4473's from ZIA for any and all purchases of firearms made by **GIDDENS**. The 4473's revealed **GIDDENS** purchased approximately nineteen (19) firearms between November 7, 2019 and December 18, 2019, to include the aforementioned rifles matching the boxes found at the **CAMACHO** residence.

38. On February 27, 2020 Affiant and ATF Agent C. Wilhite located and conducted a voluntary non-custodial interview of **GIDDENS** regarding her firearms purchases from ZIA. **GIDDENS** admitted that **CHAPA, JR.** would provide her with large sums of cash in U.S. currency and directed her to ZIA on multiple occasions to purchase firearms on **CHAPA, JR.'s** behalf. **GIDDENS** claimed she did not know how much money she received each time she purchased firearms. **GIDDENS** stated she believed there was someone providing **CHAPA, JR.** with the money that would in turn be given to **GIDDENS** to purchase the firearms.

39. **GIDDENS** stated that the sequence of events during each of her firearms purchases (November 7, 2019, November 14, 2019, November 15, 2019, December 16, 2019, and December 18, 2019) were the same with each visit to ZIA. Prior to each of these purchases **GIDDENS** stated she met **CHAPA, JR.** either the same day or a few days prior to the purchases to obtain large unknown amounts of cash in U.S. currency.

40. Once at ZIA, **GIDDENS** would inform the employee she was there to "*pick up a shipment*" or at times simply stated "*what's up man,*" at which time the ZIA employee would provide her a laptop computer to complete the ATF Form 4473. Once the 4473 was completed, **GIDDENS** would provide the unknown amount of cash to the ZIA employee who would then provide her the firearms. **GIDDENS** stated she never placed any orders for firearms prior to picking them up and **CHAPA, JR.** never disclosed what type or quantity of firearms she would be picking up. However, the firearms would be ready to be picked up upon her arrival.

41. **GIDDENS** stated she only filled out the personal biographical information portion of the 4473 and did not complete the portion that details the firearms descriptions. **GIDDENS** stated once the firearms transactions were complete, the ZIA employee would ask her if the firearms were indeed for her and would warn her not to resell the firearms. **GIDDENS** found these questions and statements odd considering she was arriving at ZIA to generate paperwork and pick up firearms on behalf of someone else which she never previously ordered.

42. Once **GIDDENS** acquired the firearms, she dropped them off to an unknown Hispanic male off of Hopper Rd. in Houston, TX, who arrived in a black or dark colored Cadillac Escalade SUV. On a separate occasion, **GIDDENS** provided the firearms to another unknown Hispanic male who drove a white Chevrolet Suburban or Ford Expedition.

43. Pursuant to this investigation, your affiant believes **GIDDENS** purchased several firearms on **CHAPA, JR.'s** behalf between November 7, 2019 and December 18, 2019, to include the F.N. (FN HERSTAL) rifle, Model: PS90, Caliber: .57, Serial Number: FN121986, Diamondback Arms Inc. rifle, Model: DB-10, caliber: 308, Serial Number: DB-7006209, and a Glock pistol, model 19X, 9mm, serial number ADKG380.

44. Your affiant believes **GIDDENS** provided false information as it pertains to question 11(a) of the ATF Form 4473 when she checked the box as being the actual buyer of the firearm when she had knowledge, or reason to believe, the aforementioned firearms she purchased between November 7, 2019 and December 18, 2019 from ZIA were in fact for **CHAPA, JR.**. Your affiant also believes **CHAPA, JR.** aided and abetted the straw purchase of said firearms by facilitating said purchases conducted by **GIDDENS**.

45. Due to the facts outlined above and to the best of your affiant's knowledge and belief, all statements made in this affidavit are true and correct. Based on these facts, your affiant believes probable cause exists for the issuance of an arrest warrant for the persons of Israel **CHAPA, JR.** for aiding and abetting Ashley **GIDDENS** in the straw purchase of the previously mentioned firearms between November 7, 2019 and December 18, 2019, in violation of Title 18 U.S.C. Section 924(a)(1)(A) and Title 18 U.S.C. Section 2.

**FACTS LEADING TO STRAW PURCHASING SCHEME BETWEEN
ISAAC RODRIGUEZ AND STEVE F. BARANOWKSI, III**

46. On March 25th and 27th, 2020 Affiant and ATF Agent C. Wilhite conducted voluntary non-custodial interviews of Steve F. **BARANOWSKI, III** after surveillance raised suspicions with agents regarding his possible involvement with Isaac **RODRIGUEZ** in an ongoing straw purchasing scheme. **BARANOWSKI, III** provided the following information and statements to the interviewing agents:

47. In late December 2019 or early January 2020, **RODRIGUEZ** asked **BARANOWSKI, III** if he could purchase firearms on **RODRIGUEZ's** behalf and directed **BARANOWSKI, III** to attempt a firearms purchase from ZIA, which **BARANOWSKI, III** successfully completed. According to **BARANOWSKI, III, RODRIGUEZ** then used him during several instances to purchase firearms, ammunition, magazines, and bulletproof vests from ZIA. **BARANOWSKI, III** stated that prior to going to ZIA **RODRIGUEZ** would provide him with an unknown amount of cash in U.S. currency for whatever items he was to purchase and/or pick up on any specific date. **BARANOWSKI, III** stated each time he purchased any items from ZIA, whether firearms or ammunition, he would always deliver those items back to **RODRIGUEZ** as instructed. **BARANOWSKI, III** informed agents that **RODRIGUEZ** stated the items being purchased by him (**BARANOWKSI**) at ZIA would be sent to Mexico.

48. **BARANOWSKI, III** stated he never contacted ZIA prior to picking up any firearms, ammunition, magazines or bulletproof vests. It was **BARANOWSKI, III's** understanding that prior to each of his visits to ZIA these items were being pre-ordered from ZIA by **RODRIGUEZ** prior to **BARANOWSKI, III** being directed to pick up said items.

49. On or about March 9, 2020, at the direction of **RODRIGUEZ, BARANOWSKI, III** purchased approximately thirty five (35) AR type rifles. **BARANOWSKI, III** stated that **RODRIGUEZ** provided him an unknown amount of cash in U.S. currency to purchase these firearms and instructed **BARANOWSKI, III** to deliver them to an unidentified Hispanic male (referred to by **BARANOWSKI, III** as "*the big guy*") at an unknown address on Hopper Street in Houston, TX.

50. **BARANOWSKI, III** stated that after completing the previously mentioned firearms purchase on **RODRIGUEZ's** behalf, and prior to delivering said firearms to the unidentified Hispanic male (herein thereafter referred to as UHM), he and a friend kept two (2) of the firearms for themselves without **RODRIGUEZ's** knowledge. **BARANOWSKI, III** was later confronted by **RODRIGUEZ** regarding the missing firearms after **RODRIGUEZ's** several phone calls to and from the UHM and ZIA. **BARANOWSKI, III** then received a phone call, while still in **RODRIGUEZ's** presence, from owner and operator of ZIA, Khalid **ABDULLAZIZ** who stated, "*hey, you bought the rifles today*?" **BARANOWSKI, III** stated he immediately knew the phone call was in reference to the missing rifles and promptly hung up the phone. **BARANOWSKI, III** eventually returned the stolen rifles to **RODRIGUEZ.**

51. Agent Cardona conferred with DEA Agent Nathanial Fountain regarding the aforementioned claims made by **BARANOWSKI, III**. Agent Fountain confirmed by way of administratively subpoenaed phone tolls the sequence of the aforementioned phone calls as described by **BARANOWSKI, III**.

52. **BARANOWSKI, III** stated that on March 15, 2020 he conducted another large firearms purchase on behalf of **RODRIGUEZ** by purchasing approximately thirty five (35) AK-47 style rifles. **BARANOWSKI, III** believed he would be picking up thirty five (35) rifles on said date but recalls **ABDULLAZIZ** mentioning the number of rifles could be closer to eighty (80). **BARANOWSKI, III** was provided an unknown amount of cash in U.S. currency by **RODRIGUEZ** to make said purchase but as before, **BARANOWSKI, III** was not certain on the quantity or type of firearms he would be acquiring for **RODRIGUEZ** from ZIA.

53. As it relates to the March 15, 2020 purchase from ZIA, **BARANOWSKI, III** stated he was directed to complete the Form 4473 by **ABDULLAZIZ**, who then conducted the necessary NICS background check on **BARANOWSKI, III**. Once the NICS check was completed, **BARANOWSKI, III** provided an unknown amount of cash in U.S. currency to **ABDULLAZIZ**. **BARANOWSKI, III** stated he did not recall the money being counted by **ABDULLAZIZ**. The firearms were then loaded into the back of a blue Chevy Avalanche truck **BARANOWSKI, III** owned at the time. **BARANOWSKI, III** notified **RODRIGUEZ** of the completed purchase who then directed **BARANOWSKI, III** to the UHM's house on Hopper Street where the firearms were dropped off.

54. On April 16, 2020, Agent Cardona received notification that three (3) of the AK-47 style rifles purchased by **BARANOWSKI, III** on March 15, 2020 were recovered in Torreon, Mexico on March 23, 2020; eight (8) days after their purchase. The firearms were traced using the National Tracing Center Electronic Tracing System (E-trace) which revealed the recovered firearms as; Century Arms International rifles, Model: VSKA, 7.62 caliber, serial numbers: SV7018364, SV7018530, SV7016253.

55. Pursuant to this investigation, **BARANOWSKI, III** admitted to purchasing for **RODRIGUEZ** approximately thirty five (35) AR type rifles on March 9, 2020 and approximately thirty five (35) AK-47 type rifles on March 15, 2020, to include the three Century Arms International rifles recovered in Mexico on March 23, 2020 (model: VSKA, caliber: 7.62, serial numbers SV7018364, SV7018530, SV7016253).

56. Your affiant believes **BARANOWSKI, III** provided false information as it pertains to question 11(a) of the ATF Form 4473 when **BARANOWSKI, III** checked the box as being the actual buyer of the firearms when he had knowledge, or reason to believe, the aforementioned firearms he purchased on or about March 9 and March 15, 2020 were in fact for **RODRIGUEZ**. Further, your affiant also believes **RODRIGUEZ** aided and abetted the straw purchase of the aforementioned rifles by facilitating the purchase for **BARANOWSKI, III.**

57. Due to the facts outlined above and to the best of your affiant's knowledge and belief, all statements made in this affidavit are true and correct. Based on these facts, your affiant believes probable cause exists for the issuance of an arrest warrant for the persons of Isaac **RODRIGUEZ**

and Steve F. **BARANOWSKI, III** for violations of Title 18 U.S.C. Section 924(a)(1)(A) and Title 18 U.S.C. Section 2 in relation to the firearms purchased by **BARANOWSKI, III** on March 9, 2020 and March 15, 2020; to include three (3) Century Arms International rifles, model: VSKA, caliber: 7.62, serial numbers SV7018364, SV7018530, and SV7016253.

*Jarod W. Cardona*
Jarod Cardona
Special Agent, ATF

The foregoing affidavit was sworn to telephonically on this 24th day of April, 2020

*Dena Palermo*
HONORABLE Dena Palermo
U. S. Magistrate Judge