## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | Crim. No. 4:20-CR-26 |
| v. | § | |
| | § | |
| | § | |
| KHALID ABDULAZIZ | § | |

## UNITED STATES' MEMORANDUM IN OPPOSITION TO PETITIONER'S 28 U.S.C. § 2255 MOTION

The United States respectfully requests that this Court deny Khalid Abdulaziz's motion to vacate his conviction. He alleges that he received ineffective assistance of counsel. His claims are meritless.

## I)   Procedural History

### a.   Criminal Conduct and Course of the Proceeding

Abdulaziz owned and operated a firearms store (PSR ¶ 35). In that capacity, he sold hundreds of firearms to various straw buyers and prohibited persons (PSR ¶¶ 37, 115). Some of these firearms were later recovered in Mexico, having been used in a firefight by members of a drug cartel which resulted in multiple deaths (PSR ¶¶ 32-34).[1] Abdulaziz was ultimately charged in a 35 count second superseding indictment along with 13 codefendants (PSR ¶ 8).

---

[1] A complete discussion of Abdulaziz's criminal conduct can be found in Probation's Presentence Investigation Report (PSR ¶¶ 31-115).

Abdulaziz was convicted, following his guilty plea pursuant to a plea agreement, of six counts of aiding and abetting a false statement on an ATF 4473 form (18 U.S.C. §§ 924(a)(l)(A), 2) (Dkt. 758, p. 1). The maximum penalty for each count is 60 months' incarceration. 18 U.S.C. § 924(a)(1)(A). In exchange for Abdulaziz's guilty plea, the government promised it would not further prosecute for conduct underlying the charges in the indictment, would move to dismiss any additional counts charging Abdulaziz contained in the indictment, and would recommend that his sentences for each of the six counts of conviction be run concurrently to one another (Plea agreement, p. 4).[2]

Hon. Gregg Costa, Circuit Judge, sentenced Abdulaziz to 60 months' incarceration for each count (Dkt. 758, p. 2). Five of those terms were to run concurrently to each other (Dkt. 758, p. 2). The sixth term was run consecutively to the other terms (Dkt. 758, p. 2). Abdulaziz's aggregate sentence was, therefore, 120 months' incarceration (Dkt. 758, p. 2).

Judgment was entered on August 3, 2022 (Dkt. 758, p. 2). Abdulaziz filed a Notice of Appeal (Dkt. 782). After conferring with appellate counsel, he requested

---

[2] In preparation of this filing, undersigned counsel reviewed an unsigned digital copy of Abdulaziz's plea agreement kept by the Assistant United States Attorney who represented the government before judgment was entered. Counsel believes that copy is a fair and accurate representation of the plea agreement signed by Abdulaziz and filed under seal.

that his appeal be dismissed (Ex. A). The Fifth Circuit then dismissed the appeal on Abdulaziz's motion (Dkt. 802).

Abdulaziz now moves to vacate his conviction, claiming he received ineffective assistance of counsel because defense counsel did not claim that the government breached the plea agreement, did not move to withdraw Abdulaziz's plea, and did not challenge two sentencing enhancements for violating the Second Amendment (Dkt. 837).

### b.    Relevant Factual History

#### i.    Re-arraignment

Abdulaziz appeared before Judge Costa to plead guilty (Dkt. 785). Judge Costa conducted a thorough and comprehensive plea colloquy with Abdulaziz (Dkt. 785, p. 4-6, 8-19, 22-24, 27-43, 49-53). Abdulaziz swore he reviewed the indictment and discussed it with defense counsel (Dkt. 785 p. 8-9). Abdulaziz was satisfied with defense counsel's performance (Dkt. 785, p. 9). Abdulaziz confirmed he wished to waive his trial rights (Dkt. 785, p. 9-11).

Judge Costa explained that each count of conviction carried a maximum sentence of 60 months' incarceration (Dkt. 785, p. 12). Judge Costa discussed the Sentencing Guidelines (Dkt. 785, p. 15-16). Abdulaziz confirmed he spoke with defense counsel about the Guidelines (Dkt. 785, p. 15). Judge Costa highlighted that defense counsel could only estimate Abdulaziz's guideline range and that Abdulaziz

3

could not withdraw his plea if he was unhappy with his final guideline range (Dkt. 785, p. 16).

The prosecutor stated that, in exchange for his plea, the government was agreeing to dismiss the remaining counts of the indictment, to not further criminally prosecute Abdulaziz for offenses arising from the conduct charged in the indictment, and to request that Judge Costa run the sentences concurrently instead of consecutively at the time of sentencing (Dkt. 785, p. 17). Judge Costa explained that he was not bound by the government's recommendation regarding concurrent sentences, he could impose sentences consecutively, and Abdulaziz could not withdraw his plea if sentences were imposed consecutively (Dkt. 785, p. 18-19). Abdulaziz confirmed he understood (Dkt. 785, p. 19). He also confirmed he read the plea agreement and discussed it with defense counsel (Dkt. 785, p. 22, *see also* p. 27).

Judge Costa explained the charges against Abdulaziz and the elements of the offense (Dkt. 785, p. 23-24). The prosecutor provided the factual basis for each count (Dkt. 785, p. 28-40). Abdulaziz stated those facts were true (Dkt. 785, p. 43).

Abdulaziz confirmed no additional promises were made in exchange for his plea (Dkt. 785, p. 50). He was not threatened or coerced into pleading guilty (Dkt. 785, p. 50). Abdulaziz entered a plea of guilty (Dkt. 785, p. 51). Judge Costa

accepted his plea (Dkt. 51-52). Abdulaziz signed the plea agreement in open court (Dkt. 785, p. 52-53).

### ii.    PSR and Objections

Probation determined Abdulaziz's base offense level was 20 (PSR ¶ 123). This was increased to 29 pursuant to USSG §2K2.1(b)(1)(E) because Abdulaziz was responsible for at least 400 firearms sold to straw buyers (PSR ¶¶ 124-125). His offense was increased by four levels pursuant to USSG §2K2.1(b)(5) because Abdulaziz used his business to traffic firearms (PSR ¶ 126). His offense level was increased another four levels pursuant to USSG §2K2.1(b)(6)(A) because the firearms were exported to Mexico (PSR ¶ 127). His offense level was also increased by two levels pursuant to USSG §3B1.3 for abusing a position of trust (PSR ¶ 129). Abdulaziz's adjusted offense level was 39 (PSR ¶ 131).

Probation decreased Abdulaziz's adjusted offense level by two for acceptance of responsibility (PSR 132). Abdulaziz's total offense level was 37 (PSR ¶ 134). Abdulaziz's criminal history score was zero and his corresponding criminal history category was I (PSR ¶ 137). Based on a total offense level of 37 and a criminal history category of I, Abdulaziz's guideline range was 210 to 262 months' incarceration (PSR ¶ 158). Because the maximum counts of conviction carry a statutory maximum of five years, which is less than the total punishment, Probation

stated the sentence imposed on one or more of the counts should be run consecutively (PSR ¶ 159).

Abdulaziz objected to multiple aspects of the PSR (Dkt. 626). In pertinent part, he objected to the trafficking enhancement, exportation enhancement, and abuse of trust enhancement (Dkt. 626, p. 8-13). The government argued in response that Probation properly applied those enhancements (Dkt. 683, p. 6-10).

### iii.    Sentencing

Abdulaziz appeared before Judge Costa for sentencing (Dkt. 787). Judge Costa heard argument from defense counsel and the prosecutor regarding the PSR, including the application of the enhancements (Dkt. 787, p. 4-27, 53-58). Judge Costa overruled the objection to the trafficking enhancement and exportation enhancement but sustained the objection to the abuse of trust enhancement (Dkt. 787, p. 27-28). Abdulaziz's resulting guideline range was 168 to 210 months' incarceration (Dkt. 787, p. 29).

The prosecutor drew Judge Costa's attention to the plea agreement and asked that Abdulaziz be sentenced to 60 months' incarceration on each to run concurrently to each other (Dkt. 787, p. 29). After she reiterated that request (Dkt. 787, p. 30-31), Judge Costa asked the prosecutor to discuss the sentence of one of Abdulaziz's codefendants (Dkt. 787, p. 31). The prosecutor explained that codefendant was

sentenced to 126 months' incarceration after receiving a guideline range of about 240 months' incarceration (Dkt. 787, p. 31-32).

Defense counsel presented a litany of factors for Judge Costa to consider before imposing sentence (Dkt. 787, p. 32-49). Abdulaziz spoke on his own behalf (Dkt. 787, p. 49-52). After discussing the various aspects of Abdulaziz's case that impacted his sentencing decision (Dkt. 787, p. 59-63), Judge Costa sentenced Abdulaziz to 60 months' incarceration for each count (Dkt. 787, p. 64). Judge Costa imposed the sentence on one count to run consecutively to the others; the other counts would all run concurrently to each other (Dkt. 787, 64). This resulted in an aggregate sentence of 120 months' incarceration (Dkt. 787, 64). Judge Costa agreed to dismiss the remaining counts of the indictment (Dkt. 787, p. 66).

## II)    Defense counsel was not ineffective at plea and sentencing.

### a.    The Standard for Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984). To successfully state a claim of ineffective assistance of counsel, Abdulaziz must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced his defense. *See id.* at 687. Defense counsel's performance was constitutionally effective if Abdulaziz fails to establish either

*Strickland* prong. *See id.* at 696. This Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).

To show prejudice in the sentencing context, Abdulaziz must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice").

Defense attorneys are not required to raise "futile" objections. *See United States v. Winters*, 530 F. App'x 390, 398 (5th Cir. 2013); *see also Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite"). Accordingly, to show defense

8

counsel was ineffective for failing to object, Abdulaziz must demonstrate that any proposed objection has "merit." *See Ries v. Quarterman*, 522 F.3d 517, 530 (5th Cir. 2008).

When a defendant cannot demonstrate that proposed objections or arguments "have merit" then the defendant has not established that counsel "was deficient…under the first prong" of *Strickland*. *See Ries*, 522 F.3d at 530. Further, this Court may also deny such a claim under *Strickland's* second prong since "the failure to make a meritless objection could not have prejudiced" the defendant. *See Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009).

### b.    Defense counsel was not ineffective for failing to object that the prosecutor breached the plea agreement.

"A breach [of the plea agreement] occurs when the Government agrees to one thing at the plea but then *actively advocates* for something different at sentencing." *United States v. Casillas*, 853 F.3d 215, 217 (5th Cir. 2017) (cleaned up) (emphasis added). "Whether a plea agreement was breached is analyzed under general principles of contract law[,]" and a court must construe "the terms strictly against" the government because it is the drafter of the agreement. *Id.* (cleaned up). Still, a "court's refusal to accept the parties' agreement is not tantamount to a breach by the

Government." *United States v. Helton*, 203 F. App'x 682, 684 (5th Cir. 2006) (unpublished).[3]

When the government enters into a plea agreement, it "must continue to advocate for acceptance of the agreement." *Casillas*, 853 F.3d at 218. Absent some provision in the plea agreement, however, there is no level of enthusiasm the government must display when making a recommendation. *Id.* In fact, an "attempt to hold the Government to promises that are not contained in the plea agreement amounts to an unreasonable understanding of the plea agreement." *United States v. Shabazz*, 844 F. App'x 778, 779 (5th Cir. 2021) (unpublished) (*citing United States v. Hinojosa*, 749 F.3d 407, 413 (5th Cir. 2014); *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011)).

Here, no breach occurred because "the Government complied with the unambiguous terms of the plea agreement." *See Shabazz*, 844 F. App'x at 779. In the plea agreement, the government agreed to not further criminally prosecute Abdulaziz in the Southern District of Texas for offenses arising from the conduct in the indictment, to dismiss the remaining counts of the indictment charging Abdulaziz, and to request the sentencing court impose concurrent sentences (Plea Agreement, p. 4). Abdulaziz does not allege he is being prosecuted further. At

---

[3] Although unpublished opinions are not binding on this Court, they may be instructive and persuasive. *United States v. Cluff*, 857 F.3d 292, 299 (5th Cir. 2017).

sentencing, the prosecutor indicated Judge Costa should dismiss the additional counts in the indictment (Dkt. 787, p. 66; *see also* Dkt. 729), and Judge Costa did so (Dkt. 730). She also requested that Abdulaziz's sentences for each count be run concurrently to each other (Dkt. 787, p. 29-30). Therefore, the government satisfied its express obligations under the plea agreement and did not breach the agreement. *See United States v. Sotelo*, 401 F. App'x 967, 968 (5th Cir. 2010) (unpublished) (holding the government did not breach the plea agreement because it "was obligated to request full credit for acceptance of responsibility and dismissal of the outstanding charges in the indictment, which it did. The agreement did not bind the parties to a particular sentencing range or recommendation").

The prosecutor's arguments in favor of certain sentencing enhancements did not breach the agreement by constituting a *de facto* request for consecutive sentences. Crucially, the prosecutor never requested consecutive sentences. She "did not withdraw" the plea agreement. *See United States v. Casel*, No. 21-10607, 2022 WL 385546, at *1 (5th Cir. Feb. 8, 2022). She "did not disavow" the agreement or the provision for the imposition of concurrent sentences. *See United States v. Gage*, 668 F. App'x 120, 120 (5th Cir. 2016) (unpublished). Instead, the prosecutor provided "consistent affirmation" of the plea agreement, including the imposition of concurrent sentences, and never began "affirmatively advocating" for consecutive

sentences in "conflict[] with the plea agreement." *See United States v. Pizzolato*, 655 F.3d 403, 411 (5th Cir. 2011). Thus, no breach occurred.

Without claiming the prosecutor violated a specific provision of the plea agreement, Abdulaziz argues the prosecutor effectively undermined "the utility of the recommendation" that the sentences be run concurrently by advocating for the application of certain sentencing enhancements. *See Casillas*, 853 F.3d at 218. However, "[t]he plea agreement did not expressly bar the Government from" advocating for the application of any sentencing enhancements and it is unreasonable to believe "the plea agreement…*implicitly* prohibit[ed] the Government from so doing." *See United States v. Joshi*, 832 F. App'x 921, 921 (5th Cir. 2021) (internal citations omitted) (emphasis in the original). Indeed, the government does not breach a plea agreement "by supporting enhancements…when the plea agreement does not include a promise to" refrain from doing so. *United States v. Melendez-Gonzalez*, 690 F. App'x 170, 171 (5th Cir. 2017) (unpublished).[4] Therefore, the prosecutor did not breach of the agreement. *See Casillas*, 853 F.3d at 218.

---

[4] This stands in contrast to cases where the government agrees in the plea agreement that a particular guideline range should apply or that a particular enhancement should not be applied, but then supports an alternative guidelines calculations or imposition of the enhancement. *See United States v. Villarreal-Parades*, 647 F. App'x 504, 504 (5th Cir. 2016) (unpublished); *United States v. Munoz,* 408 F.3d 222, 225-27 (5th Cir.2005).

Finally, Abdulaziz faults the prosecutor for making "an unfavorable distinction between [a codefendant] and Movant, noting [the codefendant], who also guidelined around 240 months, received a 126-month sentence" (Dkt. 837, p. 11). First, the "Government does not breach a plea agreement by disclosing pertinent factual information to a sentencing court." *Casillas*, 853 F.3d at 217. Second, "the Government does not have a right…to withhold relevant factual information" from a sentencing court. *Id.* These principles are especially relevant here, given the context in which the prosecutor discussed codefendant's sentence. Before the prosecutor mentioned the codefendant, Judge Costa directly requested that she address that codefendant's sentence and its relation to her recommendation of an aggregate sentence of five years' imprisonment for Abdulaziz (Dkt. 787, p. 30-31). The prosecutor could not, then, withhold the information, ignore Judge Costa's request for the information, or lie in response. Therefore, the prosecutor's answer to Judge Costa's question does not constitute a breach of the agreement.

Given that the prosecutor's remarks did not breach the plea agreement, defense counsel had no basis to object on that basis. His failure to object could not have prejudiced Abdulaziz because the objection is meritless. Moreover, Abdulaziz has not demonstrated prejudice because he has not shown that Judge Costa would have imposed a shorter sentence but for the prosecutor's comments. Judge Costa clearly understood that the prosecutor was recommending sentence of five years. In

addition to that being the prosecutor's explicit recommendation (Dkt. 787, p. 29-30) and being mentioned in the agreement itself (Plea Agreement, p. 4; *see also* Dkt. 785, p. 18), Judge Costa specifically noted the recommendation when imposing sentence (Dkt. 787, p. 59). Nevertheless, Judge Costa imposed an aggregate sentence of 10 years' incarceration (Dkt. 787, p. 64). Judge Costa provided a lengthy and detailed explanation as to why that sentence was appropriate (Dkt. 787, p. 58-64). This indicates Judge Costa "independently decided to" impose an aggregate sentence of 10 years' incarceration. *See Pizzolato*, 655 F.3d at 411. Thus, Abdulaziz has not demonstrated prejudice because "the transcript of the sentencing proceeding supports the conclusion that the government's statements were inconsequential." *See United States v. Sanchez*, 449 F. App'x 365, 367 (5th Cir. 2011) (discussing the impact of the government's purported breach of the plea agreement in determining whether the defendant's substantial rights were affected under plain error review on appeal).[5]

---

[5] Abdulaziz also complains that counsel did not appeal the breach of the agreement. However, a defense attorney does not have a constitutional duty to file an appeal. Instead, a defense attorney must consult with a client if there is reason to believe an appeal is appropriate and only file a notice of appeal if instructed to do so by the client. *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). Here, Abdulaziz filed a notice of appeal (Dkt. 782), so defense counsel was not ineffective.

Abdulaziz doesn't appear to claim that his appellate counsel was ineffective for failing to perfect an appeal. Indeed, his motion only refers to "counsel" and that seems to mean his defense attorney during the district court proceeding. Also, Abdulaziz does not address the standard of review for ineffective assistance of appellate counsel claims.

Nevertheless, if this Court determines Abdulaziz is challenging appellate counsel's performance, then it should reject that claim because appellate counsel was not ineffective for failing to perfect

### c.   Defense counsel was not ineffective for failing to move to withdraw Abdulaziz's plea.

"A criminal defendant does not have an absolute right to withdraw a guilty plea." *United States v. Harrison*, 777 F.3d 227, 234 (5th Cir. 2015). "Rather, a defendant may withdraw a guilty plea after the court has accepted it, but prior to sentencing, only if he 'can show a fair and just reason for requesting the withdrawal.'" *Id.* (quoting FED. R. CRIM. P. 11(d)(2)(B)). The Fifth Circuit has established seven factors that courts must consider in determining whether to permit a defendant to withdraw a guilty plea. *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984). Nevertheless, the *Carr* factors are not exhaustive, and no single factor or combination of factors is dispositive of whether a defendant should be allowed to withdraw a guilty plea; rather, this Court must ultimately examine the totality of the circumstances. *See United States v. Strother*, 977 F.3d 438, 443 (5th Cir. 2020); *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014).

Here, Abdulaziz has not provided a just reason for the withdrawal of his plea. He argues the fact that the prosecutor undermined the plea agreement justifies withdrawal of his plea. As explained, the prosecutor complied with the terms of the

---

an appeal. First, and most importantly, Abdulaziz instructed appellate counsel not to pursue an appeal (Ex. A). Moreover, appellate attorneys "need not raise every non-frivolous issue on appeal" to be effective. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). To determine whether appellate counsel was deficient, courts consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). Abdulaziz's claim that the government violated the plea agreement is meritless. Therefore, appellate counsel was not ineffective.

plea agreement and requested that an aggregate sentence of 60 months' incarceration be imposed. The plea agreement did not require the government to refrain from making any arguments related to the sentencing enhancements. Abdulaziz could not have withdrawn his plea based on the actions of the prosecutor at sentencing as the prosecutor did nothing unreasonable or in violation of the plea agreement.

Abdulaziz also contends defense counsel supposedly did not explain that Abdulaziz's guideline range could be higher than 60 months' incarceration.[6] This also does not justify withdrawal of the plea. The record does not suggest that Abdulaziz pled guilty with an understanding that his sentencing guideline range would be 60 months' incarceration. For instance, the plea agreement contained no provision that indicated the guideline range would be 60 months' incarceration.

Additionally, at re-arraignment, Judge Costa informed Abdulaziz that defense counsel's explanation of the guideline range was only an estimate, and no one knew what his guideline range would be (Dkt. 785, p. 16). Judge Costa explained that Abdulaziz would not be allowed to withdraw his plea if the range is "higher than [defense counsel] thought" (Dkt. 785, p. 16). Abdulaziz confirmed he understood (Dkt. 785, p. 16). Judge Costa also explained that he could run the sentences for each count consecutively even though the government was requesting the sentences for

---

[6] Abdulaziz does not explicitly claim his plea was involuntary. Nor could he. Judge Costa's thorough plea colloquy demonstrates that Abdulaziz's plea was knowing and voluntary.

each count be run concurrently (Dkt. 785, p. 18-19). Abdulaziz confirmed he understood that he would not be able to withdraw his plea if Judge Costa did not follow the government's recommendation (Dkt. 785, p. 19). Therefore, Abdulaziz has not provided a justification for him to withdraw his plea. Thus, defense counsel was not ineffective for failing to move to withdraw the plea.

### d.    Defense counsel was not ineffective for failing to challenge his U.S.S.G. § 2K2.1(b)(5) and U.S.S.G. § 2K2.1(b)(6)(A) sentencing enhancements pursuant to *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

### i.    The Enhancements

Probation may assess a four-level increase "[i]f ... defendant engaged in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5). The enhancement applies if defendant "transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual", while knowing, or having reason to believe, "such conduct would result in the transport, transfer, or disposal of a firearm to an individual ... whose possession or receipt of the firearm would be unlawful; or ... who intended to use or dispose of the firearm unlawfully." U.S.S.G. § 2K2.1, cmt. n.13(A).[7]

---

[7] The recipient's possession of the firearm would be unlawful under the enhancement if that individual "has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 2K2.1, cmt. n.13(B).

Probation may also assess a four-level increase if defendant "possessed any firearm or ammunition while leaving or attempting to leave the United States, or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States." U.S.S.G. § 2K2.1(b)(6)(A).

### ii.    *Bruen* does not affect the validity of sentencing enhancements based on firearms related conduct.

As a threshold matter, the Sentencing Guidelines do not, as Abdulaziz suggests, prohibit an individual from traveling out of the country with a firearm. In fact, the Sentencing Guidelines "do not regulate" conduct at all. *Beckles v. United States*, 580 U.S. 256, 266 (2017); *Mistretta v. United States*, 488 U.S. 361, 396, (1989) (Sentencing Guidelines "do not bind or regulate the primary conduct of the public").[8] That is, "the Guidelines do not fix the permissible range of sentences or establish new criminal offenses." *United States v. Watkins*, 940 F.3d 152, 160 (2d Cir. 2019); *Beckles,* 580 U.S. at 266 (noting the Sentencing Guidelines do not prohibit any conduct or establish minimum and maximum penalties for any crime). Thus, "there is little connection between" U.S.S.G. § 2K2.1(b)(5) and U.S.S.G. § 2K2.1(b)(6)(A) "and the Supreme Court's decision" in *Bruen. See United States v. Hampton*, No. CR 21-0306 JB, 2022 WL 4016752, at *12 (D.N.M. Sept. 2, 2022)

---

[8] Defendant asserts the enhancements are unconstitutional regulations on the ability to travel with a firearm, and repeatedly describes the enhancements as prohibitions on conduct, without explanation (Dkt. 17-19).

(rejecting the defendant's *Bruen* challenge to U.S.S.G. § 2K2.1(a)(4)(B) and explaining the enhancement "does not prohibit anybody from carrying a handgun for self-defense outside the home").

Abdulaziz's historical analysis to support his contention that the Second Amendment protects the right to travel with a firearm (Dkt. 837, p. 18-19), is, therefore, beside the point. Such history might be relevant if Abdulaziz was challenging a law that prohibits travel with a firearm. But, again, U.S.S.G. § 2K2.1(b)(5) and U.S.S.G. § 2K2.1(b)(6)(A) do not prohibit travel with a firearm. Those enhancements simply increase the guideline range for a person, convicted of a crime, who traffics firearms and transfers them outside the United States.

Importantly, judges have broad discretion when fashioning a sentence and may consider a large breadth of information. *See* 18 U.S.C. § 3661; *Pepper v. United States*, 562 U.S. 476, 480-81 (2011). This discretion enables sentencing courts to consider certain actions as aggravating factors when those actions "would not otherwise be criminal." *United States v. Abdullah*, No. 5:22-CR-00046-4, 2023 WL 3136525, at *2 (S.D.W. Va. Apr. 27, 2023) (rejecting the defendant's *Bruen* claim that U.S.S.G. § 2K2.1(b)(4) is unconstitutional). For instance, "in child exploitation cases, the advisory punishment may be increased if the offense involves the use of a computer" or "if the defendant was a parent of the child" *Id.* at *1 (citing U.S.S.G. §§ 2G2.1(b)(5), (6)(B)). No one would suggest, however, that these enhancements

criminalize or prohibit the use of a computer and being a parent. Instead, these otherwise innocent actions may justify a higher sentence when done in conjunction with, or in furtherance of, certain criminal conduct.

Similarly, even if the Second Amendment protects the right to traffic firearms and transfer them outside the United States, that conduct can still be considered when imposing a sentence for someone who has broken a valid law, such as 18 U.S.C. §§ 924(a)(1)(A), (2). A district court's consideration of this conduct at sentencing does not mean individuals are prohibited from engaging in that conduct. Thus, *Bruen*, which provides an analytical framework for determining whether certain firearm prohibitions are unconstitutional, does not invalidate sentencing enhancements involving such conduct with firearms. *See Abdullah*, 2023 WL 3136525; *Hampton*, 2022 WL 4016752 at *12.

More broadly, that sentencing courts may consider firearms-related conduct when enhancing a sentence without violating the Second Amendment is confirmed by history. For instance, "[t]here is nothing novel about enhancing a sentence because a defendant possessed a firearm in the commission of a felony, much less in the guidelines recommending such an enhanced sentence." *United States v. Wigfall*, 2023 WL 4014183, at *3 (N.D. Ind. June 15, 2023) (rejecting the

defendant's *Bruen* claim that U.S.S.G. § 2D1.1(b)(1) is unconstitutional).[9] Several founding-era laws enhanced sentences for crimes such as robbery and burglary where a firearm was present. *Id.* at *3-5. In the 1800s, enhanced sentences were imposed "for certain felonies when weapons were possessed, but not necessarily used, during the commission of the crime." *United States v. Alaniz*, 69 F.4th 1124, 1129 (9th Cir. 2023). Clearly, then, a sentencing court may consider firearms-related conduct when fashioning a defendant's sentence without running afoul of the Second Amendment.

Because *Bruen* does not invalidate sentencing enhancements, defense counsel was not ineffective for failing to object to the imposition of U.S.S.G. § 2K2.1(b)(5) and U.S.S.G. § 2K2.1(b)(6)(A) based on that decision. Moreover, Abdulaziz has not demonstrated prejudice because the objection is meritless and would have failed. This Court should deny the claim.

> ### iii. Assuming *arguendo* that *Bruen* can be relied on to challenge the constitutional validity of sentencing enhancements, enhancements for trafficking firearms and transferring them outside of the United States do not violate the Second Amendment.

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. Amend. II. This language protects "an individual right to bear

---

[9] The district court in *Wigfall* noted that the government disputed whether a sentencing enhancement "is really a firearm regulation" at all. *Wigfall*, 2023 WL 4014183, at *3. Nevertheless, that district court did not decide the issue, "assume[d] the Second Amendment applies[,] and proceed[ed] directly to the historical analysis." *Id.*

arms for defensive purposes." *District of Columbia v. Heller*, 554 U.S. 570, 602 (2008). The right to "keep and bear arms" in the Second Amendment means the right to "have" and "carry" firearms, *id.* at 582, 584, which guarantees "the individual right to possess and carry weapons in case of confrontation," *id.* at 592. "[I]ndividual self-defense is 'the central component' of the Second Amendment right." *McDonald v. City of Chicago, Illinois*, 561 U.S. 742, 767 (2010) (quoting *Heller*, 554 U.S. at 599).

In *Bruen*, the Supreme Court made the constitutional standard for testing whether a statute violates the Second Amendment "more explicit." *Bruen*, 142 S. Ct. at 2134. First, a court determines whether the Second Amendment's plain text covers the proscribed conduct. *Bruen*, 142 S. Ct. at 2129-30. If the conduct is not covered by the Second Amendment, then the law is constitutional. *See, e.g., United States v. Flores*, No. CR H-20-427, 2023 WL 361868, at *1 (S.D. Tex. Jan. 23, 2023) (rejecting *Bruen* challenge to 18 U.S.C. § 922(a)(1)(A)). If the conduct is covered by the Second Amendment, "the Constitution presumptively protects that conduct," and the government must "justify its regulation by demonstrating that is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

*Bruen* emphasized that this "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a

historical *twin*." *Id.* at 2133. To determine whether a historical prohibition is a true analogue, courts compare "*how* the challenged law burdens the right to armed self-defense, and *why* the law burdens that right" in relation to the historical prohibition. *United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023).

*Bruen* does not invalidate Abdulaziz's sentencing enhancements because the Second Amendment does not protect the right to traffic or transfer firearms. The Second Amendment, by its terms, does not protect the right to sell firearms either inside or outside the United States. *See Teixeira v. County of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017) (en banc) ("Nothing in the specific language of the Amendment suggests that sellers fall within the scope of its protection"); *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011) (unpublished) ("Chafin has not pointed this court to any authority, and we have found none, that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to sell a firearm"); *Flores*, 2023 WL 361868.[10] Indeed, the Supreme Court has made clear that its recent Second Amendment

---

[10] Because the text of the Second Amendment does not reach the transfer or sale of arms, it is unsurprising that Circuit Courts have historically looked favorably on laws that impose restrictions on those activities. *See United States v. Decastro*, 682 F.3d 160, 164–69 (2d Cir. 2012) (rejecting Second Amendment challenge to 18 U.S.C. § 922(a)(3)); *United States v. Hosford*, 843 F.3d 161, 170–71 (4th Cir. 2016) (rejecting Second Amendment challenge to 18 U.S.C. § 922(a)(1)); *Mance v. Sessions*, 896 F.3d 699, 701 (5th Cir. 2018) (per curiam) (rejecting Second Amendment challenge to 18 U.S.C. § 922(a)(3)); *United States v. Focia*, 869 F.3d 1269, 1285–87 (11th Cir. 2017) (rejecting Second Amendment challenge to 18 U.S.C. § 922(a)(5)).

jurisprudence does not call into question "laws imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570 (2008); *Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J. and Roberts, C.J., concurring); *See Bruen*, 142 S.Ct. at 2157 (Alito, J., concurring) (stating that nothing in the Court's decision disturbed longstanding restrictions on firearms). Accordingly, U.S.S.G. § 2K2.1(b)(5) and U.S.S.G. § 2K2.1(b)(6)(A) are constitutional because they do not burden conduct protected by the Second Amendment.

These sentencing enhancements also survive the second step of *Bruen*. There are multiple historical analogues for U.S.S.G. § 2K2.1(b)(5) and U.S.S.G. § 2K2.1(b)(6)(A). "[C]olonial governments substantially controlled the firearms trade." *Teixeira*, 873 F.3d at 685. For example, Connecticut banned residents from selling firearms outside the colony. *Id.* Virginia limited the sales of arms and ammunition to "subjects *inhabiting this colony*." *Id.* at 685 n.18 (emphasis added; quotation marks omitted). And Massachusetts, along with five other colonies, made it a crime to sell or provide firearms or ammunition to Native Americans. *Id.* at 685 (citing 17th-century laws from Massachusetts, Connecticut, Maryland, and Virginia).

Furthermore, the United States has a lengthy history of regulating, restricting, or prohibiting the export of arms. In 1794, the Third Congress approved, and

President George Washington signed, a bill making it unlawful "to export from the United States" items including "muskets, pistols, bayonets, swords, cutlasses, [and] musket balls." Act of May 22, 1794, 1 Stat 369; *see also United States v. La Vengence*, 3 U.S. 297 (1796) (vessel was subject to forfeiture because it violated the act by exporting firearms to Port-de-Paix). Since that time, the federal government has consistently regulated the export of goods generally—and arms specifically—in furtherance of the foreign policy of the United States. *See United States v. Curtis-Wright Export Corp.*, 299 U.S. 304, 322-29 (1936) (summarizing relevant legislation spanning from 1794 to 1912 in upholding a prohibition on the export of arms to Bolivia). Given these clear historical analogues, U.S.S.G. § 2K2.1(b)(5) and U.S.S.G. § 2K2.1(b)(6)(A) are constitutional.

In sum, even assuming *Bruen* can be used to challenge sentencing enhancements, U.S.S.G. § 2K2.1(b)(5) and U.S.S.G. § 2K2.1(b)(6)(A) are constitutional. They do not burden conduct protected by the Second Amendment. Even if they did, these sentencing enhancements are consistent with the historical regulation of firearms.

Accordingly, defense counsel was not ineffective for failing to challenge these enhancements on *Bruen* grounds. Because the objections would have been meritless, Abdulaziz has not demonstrated prejudice. This Court should deny the claim.

25

## III)   Conclusion

For the foregoing reasons, the United States respectfully requests that this Court deny Abdulaziz's § 2255 motion without further proceedings. The record conclusively demonstrates that no relief is appropriate; thus, no evidentiary hearing is needed. *See United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983). Since reasonable jurists could not disagree with the denial of the § 2255 motion, no certificate of appealability should be issued. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

By:    /S/ Kristian D. Amundsen
KRISTIAN D. AMUNDSEN
Assistant United States Attorney
Southern District of Texas Bar No. 3577856
New York State Bar No. 5533831
Attorney for Respondent
1000 Louisiana St., Suite 2300
Houston, TX 77002
(713) 567-9102

## CERTIFICATE OF SERVICE

I, Assistant United States Attorney Kristian D. Amundsen, certify that on October 30, 2023, a true and correct copy of this motion was electronically filed with the United States District Court for the Southern District of Texas and served upon opposing counsel Elizabeth Franklin-Best, Esq.

/s/ Kristian D. Amundsen
KRISTIAN D. AMUNDSEN
Assistant United States Attorney